UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA

-v.-

MEHDI MOSLEM and SAAED MOSLEM,

Defendants.
-----------------------------------------------------x

ORDER

No. 19-CR-547 (CS)
No. 23-CV-1444 (CS)

Seibel, J.

Before the Court is the joint motion of Petitioners Mehdi Moslem and Saaed Moslem to vacate their convictions and sentences pursuant to 28 U.S.C. § 2255, (ECF No. 266 (the "Petition" or "Pet.")), the Government's opposition thereto, (ECF No. 290), and Petitioners' reply, (ECF No. 292 ("Ps' Reply")). Also before the Court is Petitioners' Motion to Amend the Petition, (ECF No. 328), the Government's response thereto, (ECF No. 332), and Petitioners' reply, (ECF No. 333.)[1]

On June 3, 2021, after a three-week trial, both Defendants were found guilty of conspiracy to defraud the Internal Revenue Service, in violation of 18 U.S.C. § 371, and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. Saeed Moslem was also convicted of making false statements to a lender, in violation of 18 U.S.C. § 1014; bank fraud, in violation of 18 U.S.C. § 1344; bankruptcy fraud, in violation of 18 U.S.C. § 152; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. On October 17, 2022, Mehdi Moslem was sentenced principally to 40 months' imprisonment and Saeed Moslem was sentenced principally

[1] All docket references are to No. 19-CR-547.

to 96 months' imprisonment. (ECF Nos. 248-49.) Familiarity with the trial, the Petition, prior proceedings in the case, the general legal standards governing § 2255 petitions, and the special solicitude due to *pro se* litigants is presumed.

**I. Issues Properly Considered**

The Petition raises three grounds: (1) that Petitioners were denied effective assistance of counsel when their lawyers failed to seek dismissal of the indictment based on misconduct by the prosecution in allegedly representing before the grand jury that Petitioners' accountant, Stephen Strauhs, was a co-conspirator throughout the period of the charged frauds – 2009-2016 – when he had become a cooperator in 2012, (Pet. at 6-8);[2] (2) that Petitioners were denied due process because the Government witness's method for calculating tax loss at their *Fatico* hearing was incorrect, resulting in their being sentenced based on inaccurate information, (*id*. at 8-9); and (3) that Saaed Moslem, who had invoked his right to represent himself, was denied his Sixth Amendment right to counsel when the court would not appoint counsel for him during sentencing proceedings, (*id*. at 9-11).[3] The motion to amend adds additional allegations of ineffective assistance of counsel: (1) that counsel failed to cross-examine Strauhs about his continuing to practice after committing crimes, (ECF No. 328 at 3); (2) that counsel failed to

[2] Petitioners refer to the period 2009-2016, which is the time frame for the tax fraud set forth in the original indictment. (*See* ECF No. 2 ¶ 8.) Superseding indictments alleged that the tax fraud occurred between 2009 and 2018. (*See* ECF No. 71 ¶ 8; ECF No. 84 ¶ 7.) The original indictment alleged that the bank fraud occurred between 2010 and February 2017, (*see* ECF No. 2 ¶ 23), and the superseding indictments set that fraud as occurring between 2010 and 2019, (*see* ECF No. 71 ¶ 25; ECF No. 84 ¶ 24).

[3] Citations to the Petition refer to the page numbers generated by the Court's Electronic Case Filing system.

object to the introduction of copies of unsigned tax returns retained by Strauhs, which Petitioners contend should have been excluded under the Fourth Amendment because Strauhs had no right to possess such documents in light of his use of his office to commit crimes, (*id.* at 3-4); and (3) that counsel failed to object to the introduction of consensual recordings made by Strauhs, which Petitioners contend "were made under the assumption that [he] was still operating lawfully as a CPA, when in fact his long-term criminal conduct deprived him of such protection," (*id.* at 4).[4]

Petitioners filed the Petition while their direct appeals were pending. I inquired whether they wished to stay their appeals and have me consider the Petition, or whether they wished to withdraw it without prejudice to resubmission following the appeal. (ECF No. 267.) Both Petitioners indicated that they wanted me to consider the Petition and that they would request that the Second Circuit hold their appeals in abeyance. (ECF Nos. 281, 284; *see* ECF Nos. 270-72, 274, 282.) The Second Circuit thereafter denied Petitioners' application to hold the appeals in abeyance, (Appeal No. 22-2789 ("Appeal") ECF No. 59), and Petitioners have since filed their briefs, (Appeal ECF Nos. 131, 158, 161.)

In a brief submitted to the Second Circuit by counsel, Mehdi Moslem contends, among other things, that the method employed by the Government for calculating tax loss for restitution purposes was speculative. (Appeal ECF No. 131.) In a *pro se* brief, Mehdi Moslem contends, among other things, that the Government improperly introduced unsigned tax returns produced by Strauhs and recordings made by Strauhs, (Appeal ECF No. 158 ("MM *Pro Se* Appeal Br.") at 1, 10, 12), and that the Government's *Fatico* hearing witness inaccurately calculated the tax loss,

---

[4] The Government does not object to the amendment, but opposes the new arguments on the merits. (ECF No. 332.)

(*id.* at 1, 7-12, 18). In his brief to the Second Circuit, filed *pro se*, Saaed Moslem contends, among other things, that unsigned tax returns should not have been admitted, (Appeal ECF No. 161 ("SM Appeal Br.") at 12, 25, 37, 50-51); that the recordings made by Strauhs were illegal, (*id.* at 39); that he was denied his Sixth Amendment right to counsel when the court did not appoint him counsel during sentencing proceedings, (*id.* at 69-71); that the tax loss for sentencing purposes was incorrectly calculated, (*id.* at 74-79); and that the Government committed gross misconduct by stating in the Indictment that Strauhs had been a member of the conspiracy from 2009 to 2016, when he had become a cooperator in 2012, (*id.* at 80-82).

Petitioners correctly argue that a § 2255 motion and a direct appeal may be pursued simultaneously, *see United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011); *United States v. Outen*, 286 F.3d 622, 632 (2d Cir. 2002), but a "district court [is] not *required* to adjudicate [the] § 2255 petition during the pendency of [the] direct appeal," *United States v. Jiau*, 536 F. App'x 140, 141 (2d Cir. 2013) (summary order) (emphasis in original), and doing so is disfavored, based on "judicial economy and the concern that the results on direct appeal may make the district court's efforts on the § 2255 motion a nullity," *Outen*, 286 F.3d at 632; *see Vilar*, 645 F.3d at 548.[5] Because of "the potential for conflict with the direct appeal," *habeas* review should proceed only "in extraordinary circumstances." *United States v. Prows*, 448 F.3d 1223, 1228 (10th Cir. 2006). In other words, "[t]here is no requirement that the movant exhaust his remedies prior to seeking relief under § 2255," but "the courts have held that such a motion is inappropriate if the movant is simultaneously appealing the decision." Advisory Committee's

[5] Unless otherwise noted, all case quotations omit internal quotation marks, citations, alterations and footnotes. The Court will send Petitioners copies of any unreported cases cited in this Order.

Note to Rule 5 of the Rules Governing § 2255 Proceedings. Accordingly, the Second Circuit "generally prefer[s] to adjudicate direct appeals prior to, rather than after, collateral attacks," *Vilar*, 645 F.3d at 548, and petitions "filed before the petitioner has exhausted his direct appeal are generally considered premature," *Wall v. United States*, 619 F.3d 152, 154 (2d Cir. 2010).

The Government argues not only that judicial economy counsels in favor of holding the Petition in abeyance because I will be bound by the Second Circuit's decisions on any issues raised in both forums, but also that I should not review any claims Petitioners do not raise on direct review. (ECF No. 290 at 14-16.)[6] The latter argument is based on the principle that – except as to claims for ineffective assistance of counsel, which may be raised via § 2255 even if not raised on direct review, *see Massaro v. United States*, 538 U.S. 500, 509 (2003) – a petitioner procedurally defaults an issue by not raising it on direct review, absent cause for the default and actual prejudice, or actual innocence, *see Bousley v. United States*, 523 U.S. 614, 622 (1998).

I agree that there is no point in my deciding issues that are concurrently before the Second Circuit. If the Circuit and I were to disagree, its decision would govern, and if the Circuit and I were to agree, I would have wasted my time in a duplicative effort. Accordingly, I will not address Petitioners' claims regarding the tax loss calculation or the re-appointment of counsel, both of which are claims on appeal and both of which can be resolved on the appellate record.

The remaining claims in the Petition, as amended, raise claims of ineffective assistance of counsel and, as noted, there is no requirement that such claims be raised on direct appeal. But

[6] The Government filed its opposition brief in this court before Petitioners filed their opening briefs in the Court of Appeals, and thus the Government did not know at the time what issues Petitioners would raise.

Petitioners raise on direct appeal certain arguments that, if resolved in the Government's favor, will drive the outcome of the ineffective assistance claims. Specifically, both Mehdi Moslem and Saaed Moslem argue that consensual recordings made by Strauhs and unsigned tax returns were improperly admitted into evidence, (MM *Pro Se* Appeal Br. at 1, 10-11); SM Appeal Br. at 8, 12, 25, 29, 37, 39, 50-51), and the Petition (as amended) alleges that trial counsel were ineffective for failing to object to the admission of those exhibits, (ECF No. 328 at 4). If the Circuit finds the admission of the challenged exhibits appropriate, any ineffective assistance claim would fail, because counsel cannot be ineffective for failing to raise a meritless objection. *See, e.g.*, *Harrington v. United States*, 689 F.3d 124, 130 (2d Cir. 2012); *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995); *Beniquez v. Johnson*, No. 21-CV-1467, 2023 WL 3948738, at *17 (S.D.N.Y. June 12, 2023). Accordingly, I decline to consider those claims of ineffective assistance at this time. *Cf. Yick Man Mui v. United States*, 614 F.3d 50, 55 (2d Cir. 2010) (§ 2255 petitioner "may not relitigate questions which were raised and considered on direct appeal"); *Beras v. United States*, No. 05-CV-2678, 2013 WL 1155415, at *13 (S.D.N.Y. Mar. 20, 2013) ("[A] claim that was raised and rejected on the merits is meritless, and an attorney's failure to make a meritless argument does not amount to ineffective assistance. Therefore, purporting to consider the merits of repackaged claims that were rejected on the merits during direct review would be a waste of scarce judicial resources.").

I will consider Saaed Moslem's claim that counsel was ineffective for failing to move to dismiss on the ground of Government misconduct before the grand jury – specifically, that the Government allegedly misrepresented before the grand jury that Strauhs was a co-conspirator for the entire duration of the conspiracy, when in fact he became a cooperator in 2012. Although it

overlaps with a claim he raises on direct appeal, (*see* SM Appeal Br. at 80-82), it cannot be resolved on appeal because it requires reference to materials – specifically, grand jury minutes – that are not part of the record on appeal.

The remaining issue raised in the Petition is counsel's alleged ineffectiveness for failing to cross-examine Strauhs about his continuing to practice as an accountant after committing crimes. While there appears to be no reason Petitioners could not have raised that issue on direct appeal, they were not required to do so, and there does not appear to be any decision the Circuit will make on appeal that could moot that issue, so I will consider it.

The issues I do not reach in this Order – tax loss, reappointment of counsel, ineffective assistance for failing to object to introduction of unsigned copies of tax returns and ineffective assistance for failing to object to introduction of consensual recordings – will be held in abeyance and addressed following the Second Circuit's decision on direct appeal if the appeal does not dispose of them.

## II. Merits

### A. Legal Standards

To establish ineffective assistance of counsel, a petitioner must affirmatively show that "1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – *i.e.*, that but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)).

When evaluating counsel's performance under the first prong of the test, a reviewing court applies a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689. A petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Under *Strickland*'s second prong, the reviewing court must determine "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

"[T]he *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id.* at 105. Petitioner bears the burden of establishing both constitutionally deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

**B. Discussion**

**1. Failure to Move to Dismiss**

Petitioners first argue that their lawyers were ineffective because they did not move to dismiss the indictment on grounds of prosecutorial misconduct in the grand jury. The alleged misconduct is that "the Government submitted that Stephen Strauhs was a co-conspirator of the Defendants, and an integral part of the agreement throughout the period of the alleged single offense – which concluded in or about 2016." (Pet. at 6.) They add that "the Government did not tell the grand jury . . . that Strauhs' involvement after 2012 was in the capacity of a confidential informant (not as a co-conspirator)." (Pet. at 7.) Petitioners argue that because an informant cannot be a co-conspirator, *see, e.g., United States v. DeSimone*, 119 F.3d 217, 223 (2d Cir. 1997); *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997), the omission of this information from the grand jury presentation amounted to "a knowing or reckless misleading of the grand jury as to an essential fact," (Pet. at 7 (quoting *United States v. Lombardozzi*, 491 F.3d 61, 79 (2d Cir. 2007)),[7] that would have prevented their indictment had the grand jury known of

[7] *Lombardozzi* holds that "to warrant dismissal of an indictment after a conviction, the prosecutor's conduct must amount to a knowing or reckless misleading of the grand jury as to an essential fact;" that "[t]he mere fact that evidence presented to the grand jury was unreliable, misleading, or inaccurate, is not sufficient to require dismissal of an indictment;" and that in any event, "[i]t is well settled that a guilty verdict at trial remedies any possible defects in the grand jury indictment." 491 F.3d at 79-80. Petitioners also cite *United States v. Brito*, 907 F.2d 392, 392 (2d Cir. 1990), for the proposition that dismissal of an indictment may be required for

it, or that would have resulted in dismissal of the indictment had counsel raised it with the court either before or after trial. (Pet. at 7.) Their theory is that "there could be no conspiracy without incorporating Strauhs," (*id.* at 6-7), and that his "knowing complicity in the alleged unlawful agreement was an essential component of the agreement," (P's Reply at 3,) such that once he removed himself from the conspiracy by cooperating, "there could be no conspiracy," (*id.*). They argue that Strauhs' withdrawal in 2012 terminated the conspiracy, "presenting statute of limitations issues since the indictment in this case was not filed until 2019." (*Id.*)

Petitioners supply no evidence that the Government told the grand jury that Strauhs had been a conspirator through 2016 or that it did not tell the grand jury that Strauhs became an informant in 2012. Rather, although Petitioners did not allude to it until their reply, their argument apparently relies on a sentence in the indictment that reads, "Beginning in or about 2009, and continuing through in or about 2016, in the Southern District of New York and elsewhere, MEHDI MOSLEM and SAAED MOSLEM, the defendants, together with CC-1 [Strauhs] and others, did knowingly conspire and agree with each other to defraud the United States of America and the IRS, an agency of the United States." (ECF No. 2 ¶ 8.) Petitioners interpret this sentence as stating "unequivocally, that Stephen Strauhs, a confidential informant for the Government since 2012, conspired with the Defendants until 2016." (Ps' Reply at 2.) This is an overstatement at best. The sentence surely says that Mehdi Moslem and Saaed Moslem conspired with each other from 2009 through 2016, but it does not say unequivocally that Strauhs or others were conspirators during that entire period. Even if it could be interpreted

---

"systematic and pervasive prosecutorial misconduct as would undermine fundamental fairness," (Pet. at 7), but that quotation referred to "misconduct . . . spanning several cases," 907 F.2d at 394, which is not alleged here.

that way, the Government has provided grand jury minutes, (ECF No. 290-1), that show, unequivocally, that the grand jury was informed that Strauhs began cooperating with the Government in October 2012.[8]

Moreover, there is nothing about the fact of Strauhs' cooperation that undermines the existence of the conspiracy. As the trial evidence made clear, Strauhs, Mehdi Moslem and Saaed Moslem entered into a conspiracy beginning in approximately 2009, and while Strauhs "flipped" and therefore withdrew in 2012, Mehdi Moslem and Saaed Moslem continued to conspire with one another for years thereafter.

> The mere withdrawal of one coconspirator from the conspiracy does not terminate the conspiracy when at least two coconspirators remain who have not withdrawn. Nor does the fact that the coconspirator who withdrew has become a government informant unbeknownst to the coconspirators prevent the continuation of the conspiracy. Although a person acting as an agent of the government cannot be a coconspirator, the presence of a government agent does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture.

*United States v. Miranda-Ortiz*, 926 F.2d 172, 175 (2d Cir. 1991). Petitioners provide no explanation for why Strauhs' cooperation somehow made it impossible for them to continue to conspire with each other – as the evidence overwhelmingly showed that they did.

Thus, had trial counsel moved for dismissal of the indictment on the ground that the grand jury was unaware that Strauhs began cooperating in October 2012, the motion would have

[8] The transcript is dated March 22, 2021, the date the first superseding indictment was returned, and reflects that the testimony was before a grand jury empaneled in November 2019. The Court presumes that the same grand jury voted the second superseding indictment, which was returned on April 6, 2021, and which was the indictment on which Petitioners were tried. If that is not correct, the Government shall so notify the Court.

been denied.[9] Counsel cannot be said to have performed below professional standards in not making a meritless motion, nor can Petitioners be said to have been prejudiced by counsel not doing so. *See, e.g., Harrington*, 689 F.3d at 130; *Kirsh*, 54 F.3d at 1071; *Beniquez*, 2023 WL 3948738, at *17.

Petitioners argue in reply that while the grand jury may have been aware that Strauhs began cooperating in October 2012, the Government had not argued that the grand jury or trial jury was aware of the significance of that fact. (Ps' Reply at 4.) That the Government had not so argued is no surprise, as the claim in the Petition is not that the grand jury or trial jury were improperly instructed, but that their counsel were ineffective for failing to move to dismiss the indictment on the ground that the grand jury had not been informed that Strauhs became a cooperator in October 2012. Having shown that the premise of the claim was false, the Government had no occasion to go further. The Court, likewise, could disregard this argument. *See Krause v. Kelahan*, 575 F. Supp. 3d 302, 307 (N.D.N.Y. 2021) ("[T]hat parties may not introduce arguments for the first time in reply is beyond well-established."); *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015) ("Generally, a court does not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it."). In any event, the argument is without merit.

Because Petitioners did not contend until their reply that the grand jury may not have been aware of the significance of Strauhs' change in status, the Government has not supplied the

[9] Had Petitioners' new counsel made such a motion after trial, it would have failed for the additional reason that the jury verdict would render harmless any error in the grand jury presentation. *See United States v. Mechanik*, 475 U.S. 66, 73 (1986).

instructions given to the grand jury.[10] But even assuming that the grand jury instructions did not include an instruction that a cooperator cannot be a conspirator,[11] the grand jury's common sense would dictate that someone who joins with the Government to gather evidence and frustrate the goals of the conspiracy is no longer agreeing to break the law. Given the grand jury's awareness that Strauhs had done just that, and given the overwhelming evidence that Mehdi Moslem and Saaed Moslem thereafter continued to agree to break the law, any failure to give such an instruction to the grand jury, even if error, would be harmless. *See United States v. Dewar*, 375 F. App'x 90, 93 (2d Cir. 2010) (summary order) (where both defendants convicted of conspiracy, no plain error based on court's omission of instruction that informant could not be co-conspirator during his cooperation), *cert. granted, judgment vacated on other grounds*, 562 U.S. 1254 (2011); *cf. United States v. Delgado*, 672 F.3d 320, 342-43 (5th Cir. 2012) (no error in failing to instruct that informant cannot be conspirator where it was clear that informant never had requisite intent to further conspiracy and in light of "significant evidence of proper co-conspirators"); *Ogle v. United States*, No. 06-CV-1144, 2010 WL 1233421, at *13 (S.D. Miss.

[10] "As an initial matter, the Government is not required to provide a grand jury with legal instructions," *United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015), although "courts have found error where the government endeavors to provide the grand jury legal instructions but does so incompletely or erroneously," *United States v. Monzon-Luna*, No. 11-CR-722, 2014 WL 223100, at *1 (E.D.N.Y. Jan. 21, 2014).

[11] The trial jury was aware of the significance of the change in status, because not only did the definition of conspiracy make clear that a conspirator had to knowingly and intentionally agree to violate the law, (ECF No. 146 at 1307-14), which would leave out someone cooperating with the Government, but the jury was explicitly told that the two or more persons who would have to agree for a conspiracy to exist could not include someone who at the time was an informant or cooperating witness, (*id.* at 1309). The Government also made that clear in its summation. (ECF No. 316 at 1119 ("They conspired together, the three of them, up until October 2012, when Strauhs started cooperating . . . .").)

Mar. 25, 2010) (given that proof showed that A and B were co-conspirators, instruction that informant C could not be a co-conspirator was not necessary). Because a non-prejudicial error before the grand jury does not justify dismissal of an indictment, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988), any motion to dismiss would have failed, and thus the failure to make that motion was neither substandard performance nor prejudicial, *see Lish v. United States*, No. 15-CV-79, 2015 WL 7013307, at *4 (D. Idaho Nov. 12, 2015) (no ineffective assistance from attorney's failure to challenge court's failure to instruct that informant cannot be conspirator, because even with the instruction "the jury still would have had sufficient facts on which to base its conviction," and thus failure did not result in prejudice); *Ogle*, 2010 WL 1233421, at *13 (S.D. Miss. Mar. 25, 2010) (instruction that informant cannot be a co-conspirator would not have made any difference in outcome, given overwhelming weight of evidence).

Apart from the merits of any such motion, or lack thereof, there were sound strategic reasons for not making a motion to dismiss. "Dismissal of an indictment because of defects in grand jury proceedings is 'the most drastic remedy, and thus is rarely used.'" *United States v. Kasper*, No. 10-CR-318, 2012 WL 243609, at *2 (W.D.N.Y. Jan. 25, 2012) (quoting *United States v. Dyman,* 739 F.2d 762, 768 (2d Cir.1984)), *reconsideration denied*, 2012 WL 2573259 (W.D.N.Y. June 29, 2012). Counsel reasonably could have concluded that such a low-percentage motion was not worth the resources. Further, even if there had been prosecutorial misconduct – and I do not suggest that there was – and even if the motion would have succeeded, "dismissal without prejudice is ordinarily the appropriate remedy for prejudicial prosecutorial misconduct during grand jury proceedings." *United States v. Acquest Dev., LLC*, 932 F. Supp.

2d 453, 462 (W.D.N.Y. 2013); *see United States v. Slough*, 679 F. Supp. 2d 55, 61 (D.D.C. 2010) (court may dismiss with prejudice "only in extreme circumstances"); *United States v. Lawson*, 502 F. Supp. 158, 172 (D. Md. 1980) ("the better view is to allow reindictment upon dismissal if the new grand jury would not be affected by the prior government improprieties," as defendants do not have a right "to bar forever investigation into their alleged criminal conduct"). Given that the Government no doubt would have re-indicted, counsel might well have concluded that the motion was not worth the trouble. *See Harrington*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."); *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987) ("[F]or purposes of effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation."); *United States v. Sierra*, 372 F. Supp. 3d 187, 194 (S.D.N.Y. 2019) (Sixth Amendment does not obligate defense counsel to file every motion the facts may superficially support; "The law accords counsel reasonable latitude within which to make strategic choices regarding which motions the circumstances may sufficiently warrant, and it treats those professional calls with substantial deference."); *DiMattina v. United States*, 949 F. Supp. 2d 387, 411 (E.D.N.Y. 2013) ("It is reasonable to infer that experienced trial counsel chose to allocate resources to pursue more promising defenses rather than one with a low probability of success."); *Guidice v. United States*, No. 03-CV-4983, 2007 WL 1987746, at *3 (E.D.N.Y. July 3, 2007) (decisions concerning what motions to make "fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim").

In short, to succeed here Petitioners would have to show not only that the grand jury was misled into believing that Strauhs could be a conspirator even after he changed sides, but that

any competent defense attorney would have moved to dismiss the indictment on that ground and that that motion would have prevented their convictions. They have shown none of these things. Accordingly, the claim fails.

**2. Failure to Cross-Examine Accountant**

Petitioners contend in their application to amend that trial counsel rendered ineffective assistance by failing to cross-examine Strauhs "about his ability to serve as an accountant after having used his offense to commit a host of federal and state crimes." (ECF No. 328 at 3.)[12] In their reply on that application, they elaborate that Strauhs committed the offense of offering a false instrument for filing in the first degree, by falsely denying in his application to renew his Certified Public Accountant ("CPA") license that he had been convicted of a crime; that their counsel provided substandard assistance in eliciting at trial only that Strauhs had failed to inform the licensing authority of the conviction, as opposed to having affirmatively lied; and that had counsel brought out the affirmative lie, it would "have exposed Strauhs for who he truly is – a fraudster, a perjurer, and someone unworthy of belief or credibility" – "a revelation [that] would almost certainly have resulted in the jury rejecting Strauhs's testimony, and would have resulted in an acquittal." (ECF No. 333 at 3.)[13]

The motion to amend is granted, but Petitioners have not come close to showing ineffective assistance. First, decisions regarding the scope of cross-examination are strategic

---

[12] I presume that Petitioners meant to say that Strauhs had used his "office" to commit a host of crimes.

[13] I have already denied Mehdi Moslem's motion under Federal Rule of Criminal Procedure 33 for a new trial based on newly discovered evidence relating to Strauhs' lie and the Government's alleged failure to disclose it, (ECF No. 334 at 7-10), as well as his motion to reconsider that ruling, (ECF No. 339 at 1-2).

calls that courts will not second-guess. *See United States v. Robinson,* 52 F. App'x 566, 567-68 (2d Cir. 2002) (summary order) "(Decisions by trial counsel about how and when to engage in cross-examination are strategic in nature and, thus, if reasonably made, cannot support an ineffective assistance claim."); *Nersesian*, 824 F.2d at 1321 ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."); *Elfgeeh v. United States*, No. 09-CV-2010, 2010 WL 3780216, at *7 (E.D.N.Y. Sept. 21, 2010) ("Decisions regarding . . . the scope of witness examination are clearly tactical decisions.") (collecting cases), *aff'd*, 681 F.3d 89 (2d Cir. 2012); *Garcia v. Kuhlmann,* 897 F.Supp. 728, 730 (S .D.N.Y.1995) ("The choice of how to conduct cross-examination is a matter of trial strategy, which will not be reviewed by the Court unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy"); *see also Love v. McCray*, 165 F. App'x 48, 49 (2d Cir. 2006) (summary order) (presumption that counsel's challenged action was sound trial strategy "operates with particular force when the conduct at issue relates to counsel's conduct of cross-examination"); *Eze v. Senkowski*, 321 F.3d 110, 132 (2d Cir. 2003) ("In light of the significant deference we accord a trial counsel's decision how to conduct cross examination and our refusal to use perfect hindsight to criticize unsuccessful trial strategies, we decline to find deficient the cross examination of Henry.")

Second, Mehdi Moslem's counsel cross-examined Strauhs about the fact that he had not notified the licensing authority about his conviction (which Strauhs attempted to excuse on the basis that his plea had been sealed), despite knowing such reporting was required.[14] (ECF No.

---

[14] Strauhs' plea on July 17, 2019, remained sealed until April 13, 2021. He began testifying on May 21, 2021.

142 at 843:19-844:21 856:15-18.) The jury thus not only knew from his own testimony that he had continued to serve as an accountant after abusing his office to commit myriad crimes, including many involving false statements, but that he had deceived the licensing authorities to maintain his status as a CPA. As I found in connection with Mehdi Moslem's motion for a new trial under Federal of Civil Procedure 33:

> Not only was Strauhs' testimony corroborated as described above, but the jury was well aware that he had made numerous false statements in numerous contexts, including on his own tax returns, and that he had not informed the licensing authorities of his conviction despite knowing he was obligated to do so. That he misled the CPA licensing authorities not just by omission but also by commission was pure impeachment (having no relation to his conduct relating to Defendants) and would have been cumulative of the ample other impeachment of which Defendants and the jury were aware.

(ECF No. 334 at 10.)

In light of the substantial impeachment of Strauhs already before the jury – including his own testimony about his guilty pleas, cooperation and motives, (*see* ECF No. 311 at 508:13-510:18, ECF No. 301 at 704:19-723:8, 724:1-728:17; ECF No. 142 at 740:9-757:7, 759:3-761:4; 829:8-832:22, 845:22-848:22, 865:22-868:11), and about significant fraudulent activity committed on his own or with clients other than Petitioners, (*see* ECF No. 311 at 507:19-508:12; ECF No. 301 at 691:10-692:2, 694:20-695:5, 696:6-703:14; ECF No. 142 at 757:23-759:1, 855:24-857:7, 860:21-862:7) – and the abundant independent evidence of guilt, it is inconceivable that the information counsel did not elicit would have made any difference to the jury, let alone one affecting the outcome. *See, e.g., Lynn v. Bliden*, 443 F.3d 238, 251 (2d Cir. 2006), *as amended* (May 19, 2006) (defendant did not show how counsel's purported omissions with respect to cross-examination of witness affected outcome of trial); *Love*, 165 F. App'x at 50

("Counsel's performance cannot be deemed objectively unreasonable because he failed to pursue cumulative impeachment."); *United States v. Wilson*, 146 F. Supp. 3d 472, 483 (E.D.N.Y. 2015) (petitioner did not show that, "but for Trial counsel's allegedly ineffective cross-examinations, the outcome of the proceeding would have been different," in light of overwhelming evidence); *United States v. Pagan*, 829 F. Supp. 88, 92 (S.D.N.Y. 1993) (cumulative impeachment material unlikely to have altered verdict had it been presented to jury), *aff'd*, 28 F.3d 102 (2d Cir. 1994); *Chamberlain v. Mantello*, 954 F. Supp. 499, 511 (N.D.N.Y. 1997) ("The voluminous trial record establishes that the jury was well aware that Walker was not a model citizen. This evidence would certainly not have transformed Walker in the jury's eyes from paragon to knave."); *cf* *United States v. Tutino*, 883 F.2d 1125, 1140 (2d Cir. 1989) ("Evidence that would be offered solely to further impeach a witness whose character has already been shown to be questionable" would not probably lead to an acquittal).

Petitioners have not shown either substandard performance or prejudice from counsel's cross-examination of Strauhs, so the claim fails.

CONCLUSION

For the reasons stated above, the Petition is denied insofar as it alleges ineffective assistance of counsel from the failure to move to dismiss on grounds of prosecutorial misconduct before the grand jury and ineffective assistance of counsel from the failure to cross-examine Strauhs regarding false statements in his CPA license renewal application. As the Petition makes no substantial showing of a denial of a constitutional right as to those issues, and as no final order has yet been entered, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The remaining claims will be held in abeyance pending the Second Circuit's decision on Petitioners' direct appeals.

The Clerk of Court is respectfully directed to: 1) docket this Order in both of the above-captioned cases; 2) terminate ECF No. 328 in No. 19-CR-547; 3) send a copy of this Order to Saaed Moslem, No. 87068-054, FCI Fort Dix, Federal Correctional Institution, P.O. Box 2000, Joint Base MDL, NJ 08640; and 4) send a copy of this Order to Mehdi Moslem, 138 Smith Clove Road, Central Valley, NY 10917.

SO ORDERED.

Dated: October 23, 2023
White Plains, New York

Cathy Seibel

CATHY SEIBEL, U.S.D.J.